UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| VOLGA DNEPR UK LTD., <br><br> Plaintiff, <br><br> v. <br><br> THE BOEING COMPANY, *et al.*, <br><br> Defendants. | Case No. C20-800-RSM <br><br> ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER |

This matter comes before the Court on Plaintiff Volga Dnepr UK Ltd. ("VDA")'s Motion for a Temporary Restraining Order ("TRO") against Defendants the Boeing Company and Boeing Commercial Airplanes ("Boeing") to enjoin Boeing from selling four aircraft—the VQ-BIO, the VQ-BAB, the VW287, Line No. 1660, and the WF288, Line No. 1663—to any person or entity. Dkt. #4. Boeing has requested oral argument. The Court finds oral argument unnecessary for ruling on the motion. Having reviewed Plaintiff's Motion and Boeing's response, the Court DENIES Plaintiff's Motion for a TRO.

## I.  BACKGROUND

Plaintiff VDA operates a fleet of all-purpose cargo aircraft, which includes 22 aircraft manufactured by Boeing. Dkt. #7 (Arslanova Decl.) at ¶¶ 3-4. VDA specializes in transporting

ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER - 1

outsized cargo but also operates a smaller fleet for e-commerce and express flight services. These flights include regularly-scheduled cargo flights across Europe, Asia and North America, as well as on-demand charter service.

On November 30, 2006, VDA agreed to purchase five 747-8F aircraft from Boeing scheduled for delivery in February 2010, November 2011, February 2012, September 2012, and July 2013, respectively. *Id.* at ¶8. Although the agreement was amended with respect to delivery dates and number of airplanes purchased, parties dispute the basis for the delays and amendments. *Compare id.* a ¶ 9 *with* Dkt. #19 (Akiyama Decl.) at ¶ 3. Regardless, parties cooperated to modify the November 2006 contract. Dkt. #7 at ¶ 9.

In March 2016, parties modified the 2006 contract for VDA to purchase an additional 747-8F aircraft from Boeing. *Id.* at ¶ 10. In the spring of 2018, Boeing proposed restructuring the purchase agreement to reduce the number of 747-8F aircraft scheduled for delivery to VDA from thirteen to five. *Id.* at ¶ 11. Boeing also proposed substituting the remaining 747-8F's with a smaller model: the 777F. *Id.* VDA accepted the smaller 777F's and parties re-negotiated the contract in December 2018. *See id.* at 17. As a result, parties entered into a contract governing VDA's purchase of the five 747-8Fs ("the 747-8F contract") and a second contract governing VDA's purchase of the nine 777Fs ("the 777F contract"). Parties agree that both contracts are governed by Washington law. *See* Dkt. #8 (Shoeggl Decl.) at ¶ 11.

1. The VQ-BIO

In December 2018, Boeing offered to advance the delivery of one of VDA's 747s (the "VQ-BIO"), due for delivery in 2022, by two years to 2020 on the condition that VDA would make an immediate $45 million advance payment. Dkt. #7 at ¶ 13. VDA accepted and made the

ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER - 2

payment to secure earlier delivery. In July 2019, parties signed a contract amendment reflecting the February 2020 delivery date and acknowledging VDA's payment. *Id.*

However, in 2019, VDA's total traffic fell significantly, causing VDA in early 2020 to reduce its operations and ground a major part of its fleet. *Id.* at ¶ 15. As a result, when Boeing sent VDA a Notice of Target Delivery Date on January 13, 2020, VDA notified Boeing on January 17, 2020 that it could not accept delivery. *Id.* at ¶¶ 18, 20; *see also id.* at 20. Boeing responded in a letter dated January 21, 2020 that VDA was contractually required to take delivery of the VQ-BIO, and that until VDA completes delivery and retracts its repudiation of the parties' purchase agreement, VDA was in breach and Boeing would remarket the VQ-BIO. *Id.* at 22. On March 13, 2020, VDA notified Boeing about a proposed financing solution that would allow VDA to immediately take delivery of the VQ-BIO, which Boeing declined. Dkt. #7 at ¶ 22.

2. The 777 Aircraft

In December 2018, VDA also agreed to purchase nine Boeing 777F freight aircraft as substitutes for the 747-8F aircraft. Dkt. #7 at ¶ 32. The first three were scheduled for delivery in April 2020, May 2020, and July 2020, respectively. On January 22, 2020, VDA notified Boeing that it was also unable to accept delivery of the three 777F aircraft. Dkt. #7 at ¶ 34. As reasons for rescinding the contract, VDA cited reasons related to the freight market, Boeing's internal business decisions, Boeing's failure to pay certain amounts owed to VDA, and Boeing's lack of support in helping to refinance VDA's current 747-8 fleet. *Id.* at 48.

Boeing responded on January 28, 2020, opposing some of VDA's factual statements and stating that until VDA fulfilled its obligations under the purchase agreement, VDA was in breach and Boeing would remarket those aircraft not subject to parties' financing arrangement. *Id*. at 50-51. On February 5, 2020, Boeing notified VDA that the 777 aircraft scheduled for delivery in

ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER - 3

April 2020 ("the VQ-BAB") would not be delivered until May 2020, and confirmed in early April that the delivery of the VQ-BAB was scheduled for May 11, 2020. Dkt. #7 at ¶ 36.

       3.  <u>COVID-19 and Surging Demand for Freight Aircraft</u>

On March 27, 2020, Boeing notified VDA of its decision to temporarily suspend operations at Boeing facilities due to the COVID-19 health crisis. Dkt. #7 at 25. Boeing sent a second letter on April 8, 2020 advising that the temporary suspension of operations would continue until further notice. *Id.* at 28. Both letters appear to be boilerplate notices advising Boeing's customers of its temporary shutdowns.

Around the same time VDA received these letters, global demand for large freight aircraft began to surge in response to the COVID-19 pandemic. Dkt. #7 at ¶ 24. VDA claimed that as a result of the surge, it was now able to secure financing commitments for the VQ-BIO. On April 13, 2020, in response to these new financing offers, VDA informed Boeing that it revoked its January 17, 2020 rescission of the 747-8 contract. *Id.* at 31. The same day, Boeing replied that VDA was and remains in breach of both the 747 and the 777 purchase agreements, and that VDA's attempt to retract its repudiation was insufficient and untimely. *Id.* at 33.

VDA responded on May 1, 2020, reassuring Boeing of "VDA's unequivocal confirmation that it would accept delivery and pay all remaining amounts" for the VQ-BIO and requesting revised delivery dates with a bill for the amount due. Dkt. #7 at 36. The same day, VDA wrote to Boeing regarding the 777 purchase agreement, citing inconsistencies in Boeing's delivery notices and requesting updated delivery dates for the 777F aircraft. *Id.* at 53. Boeing replied on May 8, 2020, repeating that VDA's effort to retract its repudiation of the 747-8 was ineffective. *Id.* at 38. In a separate letter also dated May 8, 2020, Boeing informed VDA that it remained in breach of the 777F contract and reiterated that its attempt to retract its repudiation was

ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER - 4

insufficient. *Id.* at 55. VDA responded to Boeing's May 8 letters on May 12, 2020, claiming that both agreements continue in full force and effect. *Id.* at 42,

On May 27, 2020, VDA initiated this action against Boeing, seeking a temporary restraining order to enjoin Boeing from selling the four aircraft, Dkt. #4, and seeking specific performance of the parties' contract to sell the four aircraft to VDA and to award VDA damages for Boeing's breach of contract and lack of good faith. Dkt. #1 at 1. VDA claims that its April 13, 2020 letter to Boeing revoked its earlier January 17, 2020 rescission of the VQ-BIO purchase agreement, and Boeing is in breach of contract as to the VQ-BIO. Dkt. #9 at 9-14. VDA also claims that it never repudiated the 777F contract, and that Boeing is in breach of contract as to the 777F aircraft. *Id.* at 14-16. Boeing argues that VDA repudiated both the 747F and 777F purchase agreements and its retraction of both repudiations was untimely. Dkt. #18 at 13-14.

## II. DISCUSSION

### A. Legal Standard

The standard for issuing a TRO is the same as the standard for issuing a preliminary injunction. *See New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1347 n.2 (1977). A TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "The proper legal standard for preliminary injunctive relief requires a party to demonstrate (1) 'that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (citing *Winter*, 555 U.S. at 20).

ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER - 5

As an alternative to this test, a preliminary injunction is appropriate if "serious questions going to the merits were raised and the balance of the hardships tips sharply" in the moving party's favor, thereby allowing preservation of the status quo when complex legal questions require further inspection or deliberation. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011). However, the "serious questions" approach supports a court's entry of a TRO only so long as the moving party also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest. *Id.* at 1135. The moving party bears the burden of persuasion and must make a clear showing that he is entitled to such relief. *Winter*, 555 U.S. at 22.

**B. Likelihood of Success on the Merits**

VDA has not demonstrated a likelihood of success on the merits of its breach of contract claim. As an initial matter, the Court must consider whether VDA is likely to demonstrate that it never repudiated its contracts with Boeing as to the four aircraft. VDA concedes that it repudiated the 747-8F contract. Dkt. #9 at 5. However, VDA maintains that it never repudiated the 777F contract. *Id.* at 15. For the reasons set forth below, the Court finds it unlikely that VDA may prevail on the merits of this claim.

"An intent to repudiate may be expressly asserted or circumstantially manifested by conduct." *Alaska Pac. Trading Co. v. Eagon Forest Prod., Inc.*, 85 Wash. App. 354, 365, 933 P.2d 417, 422 (1997) (internal quotations omitted). However, a court "will not infer repudiation from 'doubtful and indefinite statements that performance may or may not take place.'" *Id.* (quoting *Wallace Real Estate Inv. Inc. v. Groves,* 124 Wash.2d 881, 898, 881 P.2d 1010 (1994)). Accordingly, the anticipatory breach must be "a clear and positive statement or action that expresses an intention not to perform the contract." *Id.*

ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER - 6

Here, VDA expressed its intention in the January 22, 2020 letter not to perform the conditions of the 777 contract: "In this regard we hereby inform you of the impossibility to fulfill our obligations under the Purchase Agreement." Dkt. #7 at 48. Notwithstanding this clear language, VDA now claims that the January 22 letter was merely an invitation to Boeing "to work cooperatively with it to put the purchases back on track." Dkt. #9 at 15. Alternatively, VDA describes the January 22 letter as a "warning" to Boeing about its financial situation. Dkt. #7 at 11 ("VDA had never repudiated the 777 contract, it had simply given Boeing a January 22, 2020 warning that its then-perilous financial condition would make it impossible for VDA to perform its obligations in the future.").

Even if VDA did not believe its January 22 "invitation" or "warning" amounted to a repudiation, Boeing's response on January 28, 2020 resolved any ambiguity in how it read VDA's January 22 letter: "If Customer does not immediately retract its repudiation of the Purchase Agreement, then Boeing will be compelled to share this information with Dubai Aerospace as Customer's breach will trigger specific actions under the consents to collateral assignment of purchase agreement rights . . . ." Dkt. #7 at 51. On February 5, 2020, rather than clarify any misunderstanding by Boeing, VDA again confirmed the repudiation of both agreements by referencing its "letters dated 17 and 22 January 2020 with regards to impossibility to fulfill our obligations under the Purchase Agreements and our request to refund the PDP paid for the Aircraft." Dkt. #19-1 at 6. Boeing also claims that parties held a February 11, 2020 meeting at VDA's offices near London, during which VDA reiterated its repudiation. *Id.* at ¶¶ 20-21. VDA characterizes these in-person meetings differently, claiming that "parties could not reach agreement" on solutions that would allow VDA to take delivery of the VQ-BIO. *See* Dkt. #9 at 5.

ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER - 7

To the extent that any confusion remained between the parties as to VDA's intent, Boeing reiterated on April 13, 2020 its understanding that VDA had repudiated the 777 contract. *See* Dkt. #7 at 33 ("Boeing acknowledges receipt of Customer's 13 April Letter seeking 'to confirm revocation' of Customer's 17 January 2020 and 5 February 2020 letters whereby Customer, among other things, *repudiated its obligations* under the 747 Purchase Agreement *and the 777 Purchase Agreement*. As detailed below, Customer remains in breach *of both purchase agreements* and the purported retraction is insufficient.") (emphases added). Based on these express statements in the record, the Court cannot find that VDA is likely to succeed on its argument that it never repudiated the 777 contract.

Having addressed the question of repudiation, the Court must now consider whether VDA is likely to prevail on its argument that it successfully retracted its repudiation of the 747 and 777F contracts. As set forth below, the Court also finds VDA unlikely to succeed on the merits of its retraction argument.

Under the Washington Uniform Commercial Code, a party may retract an anticipatory repudiation "by any method which clearly indicates to the aggrieved party that the repudiating party intends to perform, but must include any assurance justifiably demanded under the provisions of this Article." RCW 62A.2-611. A clear, definite, and unambiguous statement affirming that a party will fulfill its obligations is sufficient to retract a repudiation."). VDA argues that it retracted its repudiation of the 747-8F contract and the 777 contract on April 13, 2020 and May 1, 2020, respectively. Dkt. #9 at 10, 15.

There is no dispute that VDA attempted to retract its earlier repudiations in its April 13 and May 1, 2020 letters to Boeing. Nevertheless, a party that has repudiated their obligations under a contract is not afforded the luxury of time. A repudiating party has a limited window to

ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER - 8

retract their repudiation, and may do so until one of three conditions has occurred: (1) the time when "the repudiating party's next performance is due," (2) any point "since the repudiation" when "the aggrieved party . . . canceled" the contract, or (3) any point since the repudiation when "the aggrieved party . . . materially changed his or her position or otherwise indicated that he or she considers the repudiation final." RCW § 62A.2-611(1). Once any of these three events have occurred, Washington law considers it "too late" to retract the repudiation. *Hemisphere Loggers & Contractors, Inc.* v. *Everett Plywood Corp.*, 499 P.2d 85, 87 (Wash. Ct. App. 1972).

  Here, VDA has failed to make a "clear showing" that none of these events occurred. As an initial matter, VDA concedes that it breached its contract with respect to the 777 purchase agreement. *See* Dkt. #7 at ¶ 37 (VDA acknowledging "late payment"); *see also id.* at 33 (Letter from Boeing describing VDA's failure to timely remit advance payments under 777 contract). Accordingly, VDA's window to repudiate the 777 contract closed when it failed to make the timely payment. *See Rosen v. Ascentry Techs., Inc.*, 143 Wash. App. 364, 369, 177 P.3d 765, 767 (2008) ("An unpaid installment is a material breach."). On this basis alone, VDA is unlikely to succeed on the merits of its claim that it rescinded its repudiation of the 777 contract.

  Boeing also argues that VDA breached the 747 contract when it failed to pay the balance due and take delivery of the 747F-8 aircraft scheduled for delivery on February 28, 2020. *Id.* VDA claims that absent discovery, it is unclear whether the VQ-BIO was truly ready for delivery to VDA in February 2020. Dkt. #9 at 6. As an initial matter, VDA's argument ignores the fact that Boeing, as the aggrieved party, was under no contractual obligation to continue performing its conditions of the repudiated contract. RCW § 62A.2-610, cmt. n.1 ("[T]he aggrieved party" may "suspend his or her own performance" while "await[ing] performance [from] the other party"); *see also Wallace*, 881 P.2d at 1020 (repudiation renders aggrieved party's performance

ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER - 9

"irrelevant"). Moreover, VDA's speculation as to Boeing's ability to delivery the aircraft is insufficient to refute Boeing's evidence that VDA failed to perform the conditions necessary to receive delivery. In advance of the delivery date, VDA received multiple legal tender notices that listed requirements for delivery of the 747-8F. *See* Dkt. #19-1 at 10-27. The most recent of these tender notices, dated January 31, 2020, notified VDA that the aircraft was ready for delivery on February 29, 2020. *Id.* at 26. This final tender notice set forth dates for VDA's requirements to accept delivery, including a customer walk and customer flight on February 25 and February 26, 2020, respectively, which VDA apparently did not attend. *Id.* at 26-27. Based on the record, VDA has failed to make a clear showing that it retracted its repudiation before any performance deadlines passed.

The Court finds VDA's arguments to the contrary unavailing. VDA argues that under the terms of the 747-8F contract, VDA timely retracted its repudiation before performance was due. VDA cites to Section 6.4 of the 747-8F contract, which provides for Boeing's rights in the event that VDA delays acceptance of the aircraft:

> 6.4. Delay. If Customer delays acceptance of the Aircraft beyond the scheduled delivery date, Customer will reimburse Boeing for costs incurred by Boeing as a result of the delay. The costs that will be reimbursed are limited to storage fees, aircraft maintenance costs, ferry flight costs, and cost of funds for the unpaid balance due from the Aircraft invoice.

Dkt. #7 at ¶ 10.[1] VDA argues that under the contract, the only performance "due" was for VDA to take delivery of the aircraft or to reimburse Boeing for costs created by the delay. Dkt. #9 at 11. The Court finds this provision inapplicable to VDA's actions here, given that a customer's repudiation is not synonymous with "delayed acceptance" under Section 6.4. By its definition, "repudiation" means that the customer does not intend to meet the terms of the contract, meaning

---

[1] The Court references this excerpt of parties' purchase agreement as set forth in Ms. Arsalova's declaration, Dkt. #7.

ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER - 10

that it will not accept the aircraft at any point. *See* RCW § 62A.2-610, cmt. 1 (defining repudiation as "a clear determination not to continue with performance . . . ."). This action is readily distinguishable from "delayed acceptance," wherein parties remain bound to the contract but Boeing would accrue additional costs such as storage and maintenance fees caused by the delay. For this reason, the Court finds Section 6.4 inapplicable to the contract dispute at issue.

Furthermore, VDA has failed to make a clear showing that it retracted its repudiation before Boeing materially changed its position. Under Washington law, an aggrieved party may rely on the repudiation to excuse his own performance or, alternatively, "treat the contract as still in existence on performance." *Nicholson v. Thrifty Payless, Inc.*, No. C12-1121RSL, 2014 WL 2154257, at *1 (W.D. Wash. May 22, 2014). However, the aggrieved party's option expires "if the repudiating party withdraws the repudiation before the non-repudiating party has materially changed its position in reliance on the repudiation." *Id.*

VDA argues that because Boeing continued to insist on VDA's performance of its obligations under the contract, Boeing did not take VDA's repudiation as final. Dkt. #9 at 13 ("Boeing's insistence that VDA perform its obligations under the contract is simply not consistent with a party to the agreement taking a repudiation as final."). In support of this argument, VDA cites nearly-identical clauses in Boeing's correspondence with VDA, which state that VDA "remains fully obligated to perform all obligations under the 747 Purchase Agreement and the 777 Purchase Agreement until Boeing has successfully delivered the remarketed 747F Aircraft and the 777F Aircraft and has been compensated for related damages." Dkt. #7 at 34; *see also id.* at 38. While VDA argues that this boilerplate language amounts to Boeing failing to materially change its position, Boeing affirmed its intentions to remarket the aircraft in both letters. *Id.* at 34. Moreover, Boeing's representations appear consistent with its actions. Boeing

ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER - 11

claims that on March 11, 2020, it released a proposal definition quote ("PDQ") to a potential customer who had expressed interest in the 747-8F. Dkt. #19 at ¶ 39. Boeing finalized these terms with the new buyer on April 28, 2020. *Id.* at ¶ 40. Regarding the 777F aircraft, Boeing released a PDQ to a potential customer on February 21, 2020, which led to a proposed purchase agreement sent on April 2, 2020 that the customer has now accepted. *Id.* at ¶¶ 41-42. Boeing communicated these remarketing efforts to VDA and advised that advanced payments would be applied to Boeing's damages arising out of VDA's breach. *See* Dkt. #19-1 at 35.

      VDA argues that Boeing's efforts to remarket the aircraft merely amount to Boeing "changing its mind and deciding to take a different path" and do not constitute a material change in position. Dkt. #9 at 13. In support of its argument, VDA relies on Vermont supreme court case *Lowe v. Beaty*, 145 Vt. 215, 219 (1984). In *Lowe,* the court found no material change in position where the plaintiff, whose job contract was repudiated by the university, inquired about similar job positions and made "preliminary arrangements" to switch from a career in academia to private practice. *Id.* Here, the Court finds Boeing's serious efforts to remarket the aircraft, including drawing up PDQs and entering into negotiations with parties that ultimately became customers, readily distinguishable from the actions by the *Lowe* plaintiff. *Cf. id.* ("[T]he only actions taken by the plaintiff in reliance on the repudiation, and prior to the retraction, were making a few phone calls and changing his mind."). Under VDA's reasoning, nothing short of Boeing reselling the aircraft—which occurred after VDA's April 13, and May 1, 2020 notices—amounts to a material change in position. *See* Dkt. #9 at 14. VDA's position is unavailing, given that a number of courts have recognized that parties' efforts that fall short of performing under a new contract may still suffice to constitute a material change in position. *See, e.g.*, *Fischnaller v. Sumner*, 53 Wash. 2d 332, 336, 333 P.2d 636, 638 (1959) ("[R]epudiation may not be withdrawn after the

ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER - 12

other party has brought suit or *otherwise changed his position so as to make performance more burdensome*.") (emphasis added); *Truman L. Flatt & Sons Co. v. Schupf*, 271 Ill. App. 3d 983, 990 (1995) ("[D]efendants admitted . . . they had not entered another agreement to sell the property, nor even discussed or considered the matter with another party. Defendants had not changed their position at all . . . ."); *In re WBZE, Inc.*, 220 B.R. 568, 573 (D. Md. 1998) (steps taken by radio broadcaster to obtain alternative studio and transmitter were material). Accordingly, VDA has failed to make a clear showing that it retracted its repudiations of the 747-8F and 777 contracts before Boeing materially changed its position.

For these reasons, the Court finds VDA unlikely to succeed on the merits of its breach of contract claim.

### C. Likelihood of Irreparable Harm

VDA has also failed to establish a likelihood of irreparable harm, as required under both the *Winter* test and the alternative "serious questions" approach from *Wild Rockies*. VDA stands to lose millions of dollars as a result of its advanced payments to Boeing and lost opportunity costs from not securing the aircraft. VDA also cites to a "lost window of opportunity" and lost goodwill from customers during this international health crisis, wherein VDA needs additional aircraft to fulfill customers' air freight delivery needs. *See* Dkt. #9 at 20. Furthermore, VDA claims that it cannot obtain appropriate replacement aircraft at this time given the uniqueness of Boeing's aircraft and the high demand for aircraft during the COVID-19 pandemic. *Id.* at 17-18. Thes

At the same time, however, the record reflects that VDA repudiated the parties' contracts on its own accord and now seeks a TRO to remedy its delayed efforts to retract the repudiation. In circumstances where parties seeking injunctive relief inflicted the harm upon themselves,

ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER - 13

courts have declined to find irreparable harm. *See Citizens of the Ebey's Reserve for a Healthy, Safe & Peaceful Env't v. U.S. Dep't of the Navy*, 122 F. Supp. 3d 1068, 1083 (W.D. Wash. 2015) ("[A] party may not satisfy the irreparable harm requirement if the harm complained of is self-inflicted.") (internal citations omitted); *see also Al Otro Lado v. Wolf*, 952 F.3d 999, 1008 (9th Cir. 2020) ("[S]elf-inflicted wounds are not irreparable injury.") (internal quotations omitted). For these reasons, because VDA appears to have inflicted its current predicament upon itself, the Court cannot find a likelihood of irreparable injury.

### D. Balance of the Equities

The balance of equities likewise does not favor VDA. Based on the record, VDA's circumstances appear to be a consequence of its own actions, wherein it repudiated its contracts and then delayed its efforts to retract its repudiation. In contrast, granting VDA's request for injunctive relief and preventing Boeing from selling its aircraft to new buyers may damage Boeing's goodwill and reputation with other customers and reasonably impair its ability to market aircrafts in the future. While VDA describes Boeing's actions as "profiteering" from the COVID-19 pandemic, *see* Dkt. #9 at 21, the Court finds this claim unsupported by the current record. For these reasons, the Court finds that the balance of the equities tips in favor of Boeing.

### E. Public Interest

Finally, the public interest is not meaningfully implicated by the dispute between VDA and Boeing. VDA claims that granting an injunction serves the public interest by "protecting the right to freely contract through enforcement of contractual rights and obligations." Dkt. #9 at 23. The Court finds that denying relief here does not undermine this right.

To the extent that VDA claims that the public is harmed by VDA's inability to purchase the aircraft, *see* Dkt. #9 at 21, VDA acknowledges that "[t]he COVID-19 pandemic has led to a

ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER - 14

global spike in demand for air freight services. This has created a dramatic increase in demand for aircraft in the freight industry." Dkt. #9 at 17. Considering the apparent rise in sales of freight cargo aircraft worldwide, the Court is not persuaded that VDA's ability to purchase these four aircraft significantly impacts the public's ability to battle COVID-19, given the number of companies also trying to purchase cargo aircraft in response to the health crisis. Moreover, VDA has provided no reasonable basis for the Court to presume that Boeing's new customers do not intend to use the aircraft for freight cargo purposes related to COVID-19 relief.

### III.  CONCLUSION

For the reasons set forth above, the Court ORDERS that VDA's Motion for a Temporary Restraining Order, Dkt. #4, is DENIED.

DATED this 2nd day of June, 2020.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER - 15